# United States Court of Appeals
## For the First Circuit

Nos. 19-1027
     19-1745

UNITED STATES,

Appellee,

v.

LUIS SOLÍS-VÁSQUEZ, a/k/a Brujo,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Lipez, and Barron
Circuit Judges.

Ian Gold for appellant Luis Solís-Vásquez, a/k/a Brujo.
Sonja M. Ralston, Attorney, Appellate Section, Criminal
Division, U.S. Department of Justice, with whom Andrew E. Lelling,
United States Attorney, Donald C. Lockhart, Assistant United
States Attorney, Brian C. Rabbitt, Acting Assistant Attorney
General, and Robert A. Zink, Acting Deputy Assistant Attorney
General, were on brief, for appellee.

August 20, 2021

**LYNCH**, **Circuit Judge**.  This case raises as a matter of first impression whether a conviction for aggravated Racketeer Influenced and Corrupt Organization Act ("RICO") conspiracy based on Massachusetts second-degree murder is properly considered a "crime of violence" under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, when the jury makes a special finding that a defendant has committed murder as part of that conspiracy.  We conclude that it is not necessary to reach this question because the defendant has not met his burden of showing any plain error.

In 2016, the government indicted Luis Solís-Vásquez, a/k/a "Brujo," and sixty others on RICO conspiracy charges for their involvement in the "Mara Salvatrucha" gang, commonly known as "MS-13."  Solís-Vásquez was tried and convicted alongside two codefendants, Hector Enamorado, a/k/a "Vida Loca," and Noe Salvador Pérez-Vásquez, a/k/a "Crazy."  The three appealed their convictions and sentences on various grounds, and we addressed the bulk of their claims of error in United States v. Pérez-Vásquez, No. 18-1867, 2021 WL 3140521 (1st Cir. July 26, 2021).  This opinion addresses only Solís-Vásquez's challenge to the district court's restitution order.

## I. Background

We discuss the facts relevant to the restitution order and refer to our companion opinion, Pérez-Vásquez, 2021 WL 3140521, to describe the background of the case.

At the time of the events in this case, Solís-Vásquez was a member of MS-13. MS-13's mission is to kill rival gang members, and one of MS-13's "rules" is that members should kill rival gang members on sight if they have the opportunity to do so. They are also required to help fellow MS-13 members to do so when asked.

In the early morning of December 14, 2014, at an apartment in Chelsea, Enamorado ran into several rival gang members who had assaulted him the night before. He called Pérez-Vásquez and asked him to bring a gang-owned gun to the apartment because he was going to kill the rival gang members. Pérez-Vásquez told Solís-Vásquez about this request and said he would bring the gun to Enamorado. Solís-Vásquez decided to go with Pérez-Vásquez to meet Enamorado and brought a second gun.

When they arrived at the apartment, Enamorado took the first gun from Pérez-Vásquez and told Solís-Vásquez to wait at the door with the second gun so no one could leave. Solís-Vásquez waited for a few minutes, then went to smoke a cigarette on the porch. Moments later, Enamorado shot and killed one of the rival gang members, Javier Ortiz. Enamorado then shot Saul Rivera, who witnessed the shooting of Ortiz, in the chest. Rivera survived and sustained losses of $32,984.03 in medical expenses and lost wages. Solís-Vásquez does not dispute the loss amount.

## II. Procedural History

Solís-Vásquez was tried alongside Enamorado and Pérez-Vásquez. A jury convicted Solís-Vásquez and his codefendants of RICO conspiracy, with a special finding that each was guilty as part of the RICO conspiracy of second-degree murder of Ortiz. The jury made no special findings with respect to the shooting of Rivera.

On July 11, 2019, the district court conducted a restitution hearing and ordered the defendants to pay restitution to Rivera. Solís-Vásquez argued that he should not be made to pay restitution because he was a "nonparticipant" in the Rivera shooting, and that the shooting was "outside the scope of the agreement to kill Javier Ortiz." In the alternative, he argued that he should pay a lesser amount than his codefendants because of his lesser role in the offense.

The district court determined that restitution was mandatory under the MVRA because the RICO conspiracy was a "crime of violence with an identifiable victim, Saul Rivera, who suffered a physical injury." See 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(i). Enamorado and Pérez-Vásquez were ordered to pay the full amount. Solís-Vásquez was ordered to pay half the loss amount, $16,492.01, on account of his lesser role in the offense.

## III. Analysis

The MVRA requires the district court to order restitution where the defendant is found guilty of a "crime of violence, as defined in section 16 [of Title 18] . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1). Section 16 defines a crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).[1]

The MVRA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense . . . including . . . any person directly harmed by the defendant's criminal conduct in the course of [a] scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). In United States v. Collins, we read this language to mean that "each conspirator may be ordered to pay restitution for all the

---

[1]    In Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the Supreme Court held that the "residual" clause of Section 16, which defines a "crime of violence" to also include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," id. at 1211 (quoting 18 U.S.C. § 16(b)), was unconstitutionally vague as incorporated into the Immigration and Nationality Act's definition of "aggravated felony," id. at 1223. Neither party argues that the residual clause is constitutional as incorporated in the MVRA.

- 5 -

reasonably foreseeable losses caused by any conspirator in the course of the conspiracy."[2]  209 F.3d 1, 3 (1st Cir. 1999).

Solís-Vásquez makes three arguments that the district court erred in requiring him to pay restitution for the shooting of Saul Rivera under the MVRA.  As to preserved issues, "[w]e review factual findings underlying a restitution order for clear error and legal conclusions de novo."  United States v. Chin, 965 F.3d 41, 59 (1st Cir. 2020).  "The final order is reviewed for abuse of discretion."  Id.

Solís-Vásquez renews his argument on appeal that Rivera was not a "victim" under the terms of the MVRA because he was not "directly" harmed by Solís-Vásquez's criminal conduct.  See 18 U.S.C. § 3663A(a)(2).  In making this argument, Solís-Vásquez asks us to overturn our holding in Collins, and hold instead that the MVRA's definition of "victim" does not include those injured by a defendant's coconspirators.  The argument fails.  Under the "law of the circuit doctrine" we are bound by our decision in Collins. United States v. Lewis, 963 F.3d 16, 23 (1st Cir. 2020).  And to the extent that this argument rests on Solís-Vásquez's claim that he was just a bystander rather than a participant in the crime, the jury said that was not the case.

_____

[2]  Collins concerned a discretionary order of restitution under 18 U.S.C. § 3663 rather than mandatory restitution under 18 U.S.C. § 3663A, but the sections use identical language to define "victim."

Solís-Vásquez next argues that he cannot be held accountable for Rivera's injuries because Enamorado's shooting of Rivera was not within the scope of the conspiracy. This argument misunderstands what the issue is. The issue is not whether the shooting of Rivera was an aim of the conspiracy but whether the harm to Rivera was "reasonably foreseeable . . . in the course of the conspiracy." Collins, 209 F.3d at 3. The shooting of Rivera in the apartment when he was a witness to the murder in an armed conflict between rival gangs was certainly reasonably foreseeable. There was no clear error.

Solís-Vásquez's next argument is that RICO conspiracy is not a crime of violence under the MVRA. But that is not the issue before us. Our issue is whether restitution is mandatory under the MVRA when a defendant is convicted of participating in aggravated RICO conspiracy and there is a jury finding of second-degree murder under Massachusetts law.

Because Solís-Vásquez did not raise this objection in the district court, we review only for plain error. United States v. Flete-Garcia, 925 F.3d 17, 37 (1st Cir. 2019). To prevail, Solís-Vásquez must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United

States v. Mercado, 777 F.3d 532, 536 (1st Cir. 2015) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Restitution is mandatory under the MVRA where the defendant was convicted of a crime that includes as an element that the defendant used, attempted to use, or threatened to use physical force against another. 18 U.S.C. §§ 16(a), 3663A(c)(1)(A)(i); see also Sessions, 138 S. Ct. at 1211. The so-called "categorical approach" requires an assessment of the "elements of the statute of conviction" rather than the "facts of each defendant's conduct." United States v. Fish, 758 F.3d 1, 5 (1st Cir. 2014) (quoting Taylor v. United States, 495 U.S. 575, 601 (1990)). That assessment compels us to "compare the elements of the crime for which the defendant was previously convicted with Congress's definition of the type of crime that may serve as a predicate offense." Id. Thus, the critical inquiry is whether the "most innocent conduct" criminalized by the statue under which the defendant was convicted qualifies as a crime of violence under the categorical approach. Id. (quoting Karimi v. Holder, 715 F.3d 561, 567 (4th Cir. 2013)).

"If the statute under which the defendant was previously convicted is divisible, meaning 'it comprises multiple, alternative versions of a crime not all of which qualify [as a crime of violence],' courts apply a 'modified' categorical approach." United States v. Delgado-Sánchez, 849 F.3d 1, 7-8 (1st

Cir. 2017) (quoting United States v. Castro-Vásquez, 802 F.3d 28, 35 (1st Cir. 2015)). "Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016); see also Pereida v. Wilkinson, 141 S. Ct. 754, 763 (2021) (explaining the modified categorial approach). Where a statute includes a "sentencing element" permitting the court to impose a higher sentence only when certain conditions are met, "it is right to consider this as an element of the crime[] of conviction" "for the purposes of the modified categorical approach." United States v. Tsarnaev, 968 F.3d 24, 105 (1st Cir. 2020), cert. granted on other grounds, 141 S. Ct. 1683 (2021); see also Mathis, 136 S. Ct. at 2256.

This circuit considered whether a divisible conspiracy crime was a crime of violence in Tsarnaev. 968 F.3d at 103-05. Tsarnaev was convicted of conspiracy to use a weapon of mass destruction and conspiracy to bomb a place of public use. Id. at 103. The conspiracy statutes at issue provided for punishment "by death or imprison[ment] for any term of years or for life" only where "death result[ed]," and the jury determined beyond a reasonable doubt that at least one person had died as a result of the conspiracy. Id. at 103 (quoting 18 U.S.C. § 2332a(a)). The

court held that, in such circumstances, the crime was divisible and "while most conspiracies are not crimes of violence, conspiracies that are categorically defined to result in death are" crimes of violence under the ACCA.[3]  Id. at 104.  The court explained that this approach "align[ed] with the purpose" of the modified categorical approach and did not risk the "practical difficulties and potential unfairness of a factual approach."  Id. at 105 (quoting Taylor, 495 U.S. at 601);  see also Mathis, 136 S. Ct. at 2252-53 (explaining that the purposes of the categorical approach include avoiding Sixth Amendment concerns arising from a sentencing judge finding facts that increase a maximum penalty and the likelihood of error as to "non-elemental fact[s]" because "their proof is unnecessary").

Solís-Vásquez argues that RICO conspiracy is an indivisible offense and that it encompasses both violent and non-violent conduct.  The government responds that RICO conspiracy is a divisible offense, and that Solís-Vásquez was convicted of "aggravated RICO conspiracy," which has an added sentencing element that the conspiracy "is based on a racketeering activity for which the maximum penalty includes life imprisonment."  18

---

[3]    In United States v. Simmons, 999 F.3d 199, 216 (4th Cir. 2021), the Fourth Circuit disagreed with Tsarnaev's conclusion that "an 'element' relevant only to an enhanced sentence is necessarily an element of the conviction."  It therefore concluded that RICO conspiracy is not a divisible crime.  Id.

U.S.C. § 1963(a). Solís-Vásquez responds that even if RICO conspiracy is a divisible offense, it does not follow that aggravated RICO conspiracy is "divisible by predicate crime." Thus, he argues, because some crimes carrying a penalty of life imprisonment are not crimes of violence, aggravated RICO conspiracy is not categorically a crime of violence.

Solís-Vásquez also argues that aggravated RICO conspiracy does not require a completed predicate act, and thus that it cannot be a crime of violence. See Tsarnaev, 968 F.3d at 100 (holding that conspiracy to commit a violent act does not qualify as a crime of violence if it does not have an element of actually using, or attempting to use, physical force). The government responded in a letter submitted after oral argument that § 1963(a) is properly read to mean that a conviction of aggravated RICO conspiracy, unlike unenhanced RICO conspiracy, requires a completed predicate offense. The government argues that aggravated RICO conspiracy incorporates a completed state crime as a predicate offense and that it cannot obtain a life sentence for a RICO violation without proving that the defendant committed the underlying offense carrying a life sentence. Here, the predicate offense is second-degree murder. Second-degree murder under Massachusetts law is a crime of violence. See United States v. Báez-Martínez, 950 F.3d 119, 126-28 (1st Cir. 2020) (holding second-degree murder requiring malice aforethought is a

- 11 -

crime of violence under the Armed Career Criminal Act (ACCA)); see also Commonwealth v. Earle, 937 N.E.2d 42, 47 (Mass. 2010) ("The elements of murder in the second degree are (1) an unlawful killing and (2) malice.").

United States v. Nguyen offers support for finding that aggravated RICO conspiracy is divisible by predicate act for purposes of the modified categorical approach. 255 F.3d 1335, 1343 (11th Cir. 2001). There, the Eleventh Circuit found that, in order for a life sentence to be imposed under 18 U.S.C. § 1963(a), the jury must find beyond a reasonable doubt that the defendant completed the predicate crime. Id. This holding in Nguyen supports a reading of § 1963(a) which incorporates the elements of the predicate act, here, second-degree murder, into the statute.

Solís-Vásquez fails to point to any binding precedent that aggravated RICO conspiracy based on murder is not a crime of violence.[4] In light of the substantial case law supporting the district court's ruling, Solís-Vásquez fails to demonstrate any "clear or obvious" error. It is not necessary at this time to decide whether aggravated RICO conspiracy is a crime of violence

_____

[4] In a post-argument Rule 28(j) letter, Solís-Vásquez points to United States v. Green, in which the Eleventh Circuit held that 18 U.S.C. § 1962(d) was not a crime of violence under the MVRA. 981 F.3d 945, 952 (11th Cir. 2020). But that decision does not address the divisibility of 18 U.S.C. § 1963(a), the aggravated form of conspiracy central to this case.

under § 16(a) where the jury has made a special finding that the defendant is guilty of second-degree murder because the "clear or obvious" prong of the plain error test has not been met.

As Solís-Vásquez cannot demonstrate "clear or obvious" error by the district court, we do not address the final two prongs of plain error review. Ordering restitution in this case aligns both with Congress's goal of ensuring compensation for victims of crime and the purposes of the categorical approach.

**IV. Conclusion**

<u>Affirmed</u>.